## S. J. BENNETT v. FOX FILM CORPORATION.[1]

### May 13, 1921.

### No. 22,198.

**Injunction to prevent irreparable injury.**

1. The courts may enjoin a party from breach of a contract when necessary to prevent irreparable injury. The matter rests largely in the discretion of the trial court. When an injunction necessarily requires the doing of affirmative acts of performance, the relief will be sparingly granted.

**No abuse of discretion.**

2. Contracts involved in this action are construed to give plaintiff substantial rights, and there was no abuse of discretion in enjoining their violation by defendant.

Action in the district court for St. Louis county for a temporary injunction restraining defendant from violating the provisions of certain contracts and that defendant be adjudged specifically to perform the contracts. From an order granting plaintiff's motion for a temporary injunction during the pendency of the action, Dancer, J., defendant appealed. Affirmed.

*Charles J. Eisler*, for appellant.

*Washburn, Bailey & Mitchell*, for respondent.

HALLAM, J.

Plaintiff operates the Tempest Theatre in West Duluth. Defendant is a producer and distributor of motion picture films. Plaintiff alleges that on March 29, 1920, the parties entered into two written agreements. By one, defendant agreed, during the year commencing May 17, 1920, and terminating May 16, 1921, to furnish and release to plaintiff one "Excel" picture every second week, to be furnished successively in the order in which the same were released, and to grant or license the use of one

[1] Reported in 182 N. W. 905.

copy of each of said films at said theatre for two successive days. The term "Excel Picture" is defined to mean "only such pictures which have been released * * * in the past under the 'Excel' brand and such future releases as shall be designated by the distributor as 'Excel Pictures.'"

It was stipulated that defendant should not be liable for failure or delay in making deliveries by reason of accidents, strikes, fires, orders of court, rulings of the censor, delays of common carriers or other causes beyond its control.

It was further stipulated that in the event of illness, injury, incapacity, death or default of artists, contractors, or other persons or corporations engaged in the production of pictures to be distributed, or any other causes beyond its control, defendant would be excused from the performance of the contract, and would have the right to cancel the agreement upon 10 days' notice.

It was further stipulated in section 12 of the contract that "either party to this agreement may, by notice by registered mail, given within ten days after the exhibition of any motion picture in the exhibitor's theatre, limit this contract to two additional pictures and upon the delivery for exhibition of such additional motion pictures, this contract will terminate."

The foregoing stipulations are embodied in the printed form of contract. At the end the following was added in typewriting. "This contract is noncancelable until January 1st, 1921."

The other contract is the same in substance except that it provides for the furnishing of "Victory" pictures instead of "Excel" pictures.

It is alleged that on July 15, 1920, defendant requested plaintiff to surrender and cancel the contract, and, upon plaintiff's refusal, defendant commenced a course of conduct to annoy and harrass plaintiff, and on several occasions refused to furnish pictures as contracted for after plaintiff had advertised them. It is further alleged that the defendant refused to carry out its contract intentionally and with intent to injure and destroy plaintiff's business and the good will of his theatre. The complaint asks that defendant be enjoined from violating the provisions of said contract and that it be adjudged to specifically perform said con-

tract and the plaintiff have such other and further relief as may be equitable and just.

The answer alleged that, after entering into said contract, defendant was compelled to discontinue the production of further "Excel" or "Victory" pictures, by reason of the termination of contracts of employment of various motion picture actors in its employ. As to certain of the failures to produce films, it is alleged that the failure was due to inability to procure them and that there was no intentional failure to perform the contract.

On August 26, 1920, defendant gave notice of the termination of the contract, acting under section 12 thereof.

After a hearing, the court made an order enjoining defendant during the pendency of this action, or until further order of the court, from violating the provisions of the contracts. Defendant appealed from that order.

The appeal presents the one question whether it was error to enjoin the violation of these contracts.

Upon taking the appeal, defendant gave a supersedeas bond and continued to violate its contracts. The case has never been tried on the merits. No move was made to advance the appeal on the calendar, and now that it has been submitted there is but a remnant of the contracts left. Not only that, but ever since January 1, 1921, defendant has concededly had the option to cancel the contracts. The injunction has therefore ceased to be of much importance.

1. The process of injunction to restrain a threatened breach of a contract will not be readily resorted to, but it may be resorted to when necessary to prevent irreparable injury. 22 Cyc. 848; Jesse L. Lasky F. P. Co. v. Celebrated Players' Film Co. 214 Fed. 861. The matter rests in large measure in the discretion of the trial court. Chicago Municipal Gas Light and Fuel Co. v. Town of Lake, 130 Ill. 42, 22 N. E. 616. When an injunction necessarily requires the doing of affirmative acts in performing the contract, the relief will be sparingly granted, but the court has power to prevent irreparable injury by issuing mandatory injunctions in such cases. Southern Ry. Co. v. Franklin & Pittsylvania R. Co. 96 Va. 693, 32 S. E. 485, 44 L.R.A. 297; Witkowsky v. Affeld, 283 Ill. 557, 119 N. E. 630; Chester & D. T. Road Co. v. C. D. & P. Ry. Co. 217 Pa. St. 272, 66 Atl. 358.

2. Construing these contracts we hold: The trial court was right in holding that the contract could not be canceled prior to January 1, 1921. The language of the last paragraph is explicit on that point and it is controlling. The trial court was right in holding that the contract obligated the defendant to produce in the one case "Excel" pictures and in the other case "Victory" pictures, unless excused for the causes stipulated in the contracts, and that it could not rid itself of this obligation by arbitrarily abandoning the brand or changing the names of its pictures.

The acts of defendant in violation of its contracts were apparently done under a belief of its legal right to cancelation of the contracts. Though the injunction may have impliedly required defendant to do some affirmative acts, we think there was no error or abuse of discretion in enjoining violation of the contracts.

Order affirmed.

HOLT and DIBELL, JJ. (dissenting).

In our judgment the facts do not make a case for a mandatory temporary injunction.