IRVING JUSTER, AS SPECIAL ADMINISTRATOR OF THE
ESTATE OF WILLIAM WALKER, JR., v. MORRIS P.
GROSSMAN, AS SPECIAL ADMINISTRATOR
OF THE ESTATE OF RUSSELL JOHN-
SON, JR., AND ANOTHER.
DISTRICT COURT OF HENNEPIN COUNTY
AND ANOTHER, RESPONDENTS.[1]

July 29, 1949.

No. 35,039.

Sheldon D. Karlins and Levitt & Karlins, for relator.
Meagher, Geer & Markham, for defendants.

[1]Reported in 38 N. W. (2d) 832.

KNUTSON, JUSTICE.

William Walker, Jr., was killed in an automobile in which he was riding as a passenger on August 21, 1948. Defendant Earl Williams was the driver of the automobile. The other defendant's decedent, Russell Johnson, Jr., was also killed in the same automobile accident. An action was commenced against Earl Williams and the special administrator of the estate of Russell Johnson, Jr., in October 1948. Plaintiff, special administrator of Walker's estate, contends that there were no witnesses to the accident other than Earl Williams. On June 7, 1949, plaintiff served upon defendants a notice for taking the deposition of Earl Williams, stating therein that the ground therefor was that Williams was about to leave the state and did not intend to return in time for the trial. The notice was supported by an affidavit of a cousin of Earl Williams, stating that Williams was having trouble with his wife and that he had told affiant he intended to leave the state of Minnesota about June 19, 1949, and did not intend to return. Thereafter, a subpoena was served upon Williams commanding him to appear before a designated notary public on June 15, 1949, for the purpose of having his deposition taken.

On June 13, 1949, the attorneys for Earl Williams served upon plaintiff an order to show cause, notice of motion, and supporting affidavits, requiring plaintiff to appear before the district court of Hennepin county and show cause why he should not be restrained from taking the deposition or from issuing a subpoena for the appearance and attendance of Earl Williams before any notary public for the purpose of securing or taking his deposition. The order to show cause was returnable at the same time as had been originally set for the taking of the deposition of Earl Williams. The supporting affidavit of Earl Williams denies that he has any intention of leaving the state permanently, and he states that his intention is to be present at the time of the trial.

After hearing the matter, the district court made its order on June 17, 1949, restraining plaintiff from proceeding with the taking of the deposition. Thereafter, on June 18, an application was made

to this court for a writ of prohibition restraining the district court from interfering with plaintiff's right to take the deposition. On June 20, an alternative writ was issued staying the proceedings, returnable before this court on June 27, 1949. The alternative writ was served at 11:50 a. m. At that time, the trial court's restraining order had not been filed or served. Later that day, after having knowledge of this court's alternative writ restraining any further proceedings, the attorneys for Earl Williams caused the restraining order to be filed with the clerk, and subsequent thereto it was served. The trial court was not consulted in such proceedings, nor does it appear that he knew of or authorized the filing of his order after the alternative writ was issued out of this court.

The question involved in this proceeding has never come before us and has been presented to only a very few courts so far as we have been able to find. The statute under which plaintiff seeks to take this deposition, M. S. A. 597.01, reads as follows:

"The deposition of a witness whose testimony is wanted in any civil cause pending in this state before a court, magistrate, or other person authorized to examine witnesses, or in a controversy submitted to arbitrators, may be taken, upon notice to the adverse party of the time and place of such taking, by or before any officer authorized to administer an oath in the state or territory in which the same may be taken, when the witness:

"(1) Is within the state and lives more than 30 miles from the place of trial or hearing; or is about to go out of the state, not intending to return in time for the trial or hearing; or is so sick, infirm, or aged as to make it probable that he will not be able to attend at the trial or hearing;

"(2) Is without this state, and within any state or territory of the United States."

It is essential that one of the causes or reasons specified by the statute shall exist before a deposition *de bene esse* may be taken. Atkinson v. Nash, 56 Minn. 472, 58 N. W. 39. If it is made to appear at the time of the trial that such reason did not exist, the deposi-

tion may not be used. Davison v. Sherburne, 57 Minn. 355, 59 N. W. 316, 47 Am. R. 618.

■ The question presented here is this: When a party seeking to take the deposition of a witness serves a proper notice stating one of the statutory grounds to exist, and the witness whose testimony is desired appears and challenges the existence of the reason for taking the deposition, may the court determine, on motion or order to show cause, the existence of statutory cause and, if it concludes that such cause does not exist, restrain the taking of the deposition?

The only cases we have been able to find directly considering this question have arisen under federal statutes. For all practical purposes, the federal statutes are similar to ours. In Kline Bros. & Co. v. Liverpool & L. & G. Ins. Co. (C. C.) 184 F. 969, decided in 1911, in a short opinion in which the facts are not stated, the court said:

"The party having the right to take depositions de bene esse under section 863 of the Revised Statutes (U. S. Comp. St. 1901, p. 661) without any application to or assistance from the court, I doubt the power of the court to vacate or extend the notice. The party who gives the notice takes the risk of the deposition being suppressed if it does not comply with the requirements of the statute. It would greatly impair the efficiency of the statute, which is aimed at emergencies, if courts were to intervene. If the plaintiff thinks the notice is bad, his course is to treat it as a nullity, and move to suppress the depositions, if taken."

In Henning v. Boyle (C. C.) 112 F. 397, the court said:

"Plaintiff has applied in the alternative for a commission to take the testimony of a witness in Kentucky, or for a subpoena to require his attendance there. He is mistaken in his practice. The method of taking testimony by commission is cumbersome and unsatisfactory, and not resorted to when the convenient method of taking proof prescribed by section 863, Rev. St. U. S., is available. That section provides for the case of a witness who lives at a greater distance than 100 miles from the place of trial. No order or other direction of the court is required antecedent to such examination.

The right to take it upon notice merely, in the manner prescribed, is given absolutely to the party by act of congress. If question is to be raised as to the reasonableness of the notice, or as to the regularity of the proceedings, it may be raised by motion to suppress. With this efficient and simple method of taking proof available, the party is in no position to ask for a commission."

While the precise question here involved was probably not considered by the court in In re National Equipment Co. (2 Cir.) 195 F. 488, 489, the following language of the court is pertinent:

"* * * It would not be within the power of the District Court or of any judge to deprive a party of the rights accorded to him by that section."

The Kline Bros. case was followed by the court in Nieman v. Plough Chemical Co. (6 Cir.) 22 F. (2d) 73, 76, where the circuit court said that the "court would have had no right to prevent resort to the statute in question," citing Kline Bros. & Co. v. Liverpool & L. & G. Ins. Co. and In re National Equipment Co. *supra*. (See footnote 8.)

In Dowling v. Jones (2 Cir.) 67 F. (2d) 537, 538, Circuit Judge Hand, recognizing the rule of these cases, said:

"* * * Under the doctrine in this circuit it may be that Jones could not have moved to suppress the notices to take the depositions." (Citing above cases.)

In Willmott v. Agwi Nav. Co. (D. C.) 16 F. Supp. 870, the court said:

"The power of the court to vacate the notice is doubted, according to Kline Bros. & Co. v. Liverpool & London & Globe Ins. Co. (C. C.) 184 F. 969."

In the case of Audiffren Refrigerating M. Co. v. General Elec. Co. (D. C.) 245 F. 783, decided in 1917, the federal district court of New Jersey refused to follow the Kline Bros. decision above, holding that where a deposition *de bene esse* is desired, and defendant moves to vacate the notice, the court may hear and determine

the matter. Even at the risk of unduly lengthening this opinion, we quote the pertinent part of the court's opinion (245 F. 784):

"* * * To support this contention the defendant relies upon the decision of Judge Ward in the Circuit Court for the Southern District of New York in Kline Bros. & Co. v. Liverpool, London & Globe Insurance Co. (C. C.) 184 Fed. 969. Counsel has failed to direct my attention to, and I have been unable to find, any other reported case in which the question has been directly passed upon. It is true that Judge Lacombe, speaking for the same court, in Henning v. Boyle, 112 Fed. 397, said:

" 'No order or other direction of the court is required antecedent to such examination. The right to take it upon notice merely, in the manner prescribed, is given absolutely to the party by act of Congress. If question is to be raised as to the reasonableness of the notice, or as to the regularity of the proceedings, it *may* be raised by motion to suppress.'

"The point in question was not, however, in any way before him for decision. He was merely making some observations on the effect of the statute. It will be noticed that he did not say that the questions regarding the regularity of the proceedings *'must'* be raised by motion to suppress, but merely that they *'may'* be so raised. He dealt more particularly with the point that no permission or other authorization of the court was necessary as a condition precedent to the examination. But that is quite different from holding that the court may not, when called upon in advance of the examination, decide whether the procedure which the party has followed is proper. While Judge Ward did deal with the point in question, I do not understand that he flatly decided that there was *no power* to determine, in advance of the taking of the depositions, whether or not the method by or manner in which they were proposed to be taken would conform to the statute, and in other respects comply with the law. In a very brief opinion he expressed merely a 'doubt' as to the power of the court in that respect. While it is true that he declined to vacate the notice of the taking of the depositions, still it

would seem that his action in doing so was but the exercise of discretion, because he considered that the plaintiff (who moved to vacate) would be amply protected by a motion to suppress the depositions after they had been taken; the party giving the notice taking the risk that they might be suppressed.

"If the practice adopted by Judge Ward were to be followed in all cases, it is apparent that the party to whom the notice is given would be compelled to take a chance that the deposition might not be eventually suppressed. He would be placed, without any fault of his, in the unenviable position of deciding whether he should incur the expense of being represented at the examination, which, if the deposition were later suppressed, would be useless and unnecessary, or whether he should not do so, which, in the event of the regularity of the depositions being sustained, might prove very disastrous to him. It is conceivable, also, that such a practice might readily be used for the purpose of oppression and harassment. While I hesitate to express a different opinion than Judge Ward, I am unable to concur in his reasoning that to hold that the court may, in advance of the taking of the depositions, decide whether the proceedings by which it is proposed to take them are regular or not, 'would greatly impair the efficiency of the statute.' It seems to me that the power of the courts to so intervene would have just the opposite result. It would be surely preferable, and more likely to avoid hardship on both parties, if the court, when objection to the regularity of the proceedings is made, were to determine in advance whether any depositions so proposed to be taken could be used upon final hearing or trial, because, in that way, the party giving the notice would avoid the expense incident to the taking of the depositions, if they could not later be used, and escape the possibility that he would be deprived of the testimony on final hearing or trial, and the party to whom the notice is given would, on the one hand, be saved the expense of having counsel attend the examination, in case he did not dare to take the chance that the court would later suppress them, and, on the other hand, would avoid the necessity of his taking any such risk.

"Nor do I think that it can be assumed that the courts would permit, by recourse to them, the emergency purposes of the statute to be impaired, as Judge Ward seems to have feared. If the courts have power to suppress depositions which have not been taken in conformity with the law, as it has never been questioned that they have, I fail to see why they have not power, in advance of taking them, to determine whether the procedure or method by which it is proposed to take them complies with the law. The power exercised in each case is identically the same; the difference is only as to the time when the power is exercised. I cannot conceive that Congress intended to impose on litigants the hardship which, as I have endeavored to above point out, would follow a construction of the statute denying the power of the courts to determine in advance the question as to the regularity or legality of the proceedings by which the depositions are proposed to be taken. Although the question now under consideration was not directly raised, it is important to note that Judge Davis recently in this court restrained, in advance, the taking of depositions under section 863, in an equity suit, because it was proposed to take them without the permission of the court, after the expiration of the time limited in equity rule 47 (198 Fed. xxxi, 115 C. C. A. xxxi). Block v. Arrowsmith Mfg. Co. (D. C.) 243 Fed. 775. I am constrained to hold, therefore, that this court has the power, when appealed to, to vacate the notices in question in advance of the taking of the proposed depositions, if the procedure is irregular."

The matter comes here on an application for a writ of prohibition.

In order for a writ of prohibition to issue, three essentials must exist: (1) The court, officer, or person against whom it is issued must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power by such court, officer, or person must be unauthorized by law; and (3) the exercise of such power must result in injury for which there is no other adequate remedy at law. State ex rel. Hahn v. Young, 29 Minn. 474, 9 N. W. 737; State ex rel.

Roberts v. Hense, 135 Minn. 99, 160 N. W. 198; Nemo v. Hotel, etc., Local No. 556, 227 Minn. 263, 35 N. W. (2d) 337, 811.

The existence of the first and last of these essentials is evident. Does the second exist?

A writ of prohibition will not be used to correct errors or reverse illegal proceedings, but it is used to prevent or restrain the usurpation by inferior tribunals or by judicial officers of powers which they do not have and to compel them to observe the limits of their jurisdiction. Dayton v. Paine, 13 Minn. 454 (493); Heinsch v. Kirby, 222 Minn. 352, 24 N. W. (2d) 493.

A writ of prohibition does not lie as a substitute for an appeal where appeal will give an adequate remedy. State ex rel. Minnesota Nat. Bank v. District Court, 195 Minn. 169, 262 N. W. 155.

With these principles in mind, the question is: What did the legislature have in mind when enacting the statute under which plaintiff seeks to proceed? It seems to us that the legislature must have intended that the statute should provide an expeditious and effective means of taking the testimony of witnesses prior to trial. When the deposition was desired for the reason that the witness was about to leave the state, it would seem that the existence of the right to take the deposition should not be interfered with by the court. The remedy by appeal from the decision of the court preventing the taking of a deposition of this kind is entirely inadequate. A review of the court's decision by appeal or certiorari would in all probability not be heard for several months. In the meantime, the witness may be gone and the party seeking his deposition would have no remedy at all. Even if the decision were finally reversed on appeal, plaintiff would find the victory an empty one if the witness were no longer available.

The danger that the statutory right to take depositions will be used for the purpose of oppression or harassment, as pointed out by District Judge Haight in Audiffren Refrigerating M. Co. v. General Elec. Co. (D. C.) 245 F. 783, *supra,* does not seem to us to be sufficient to offset the harm that will result to a party who is de-

prived of taking the deposition of a witness who he believes is about to leave the state. The legislature did not provide in the statute any requirement that the court participate or authorize the taking of such deposition. We believe the better rule to be that when the notice states one of the statutory reasons the deposition may be taken as a matter of right without intervention by the court, and that if it is improperly taken it may be suppressed on motion at the time of trial. If the witness is then present, the deposition may not be used. If the witness is not present, the party who sought his deposition has been fully and amply protected.

In Livesey v. Bennett, 80 Mass. 130, the witness whose deposition was taken on the ground that he was about to leave the state testified that he had no present intention of leaving the state. At the time of trial defendant objected to the use of the deposition on the ground that no reason existed for its taking. The court, in upholding its admission, said (80 Mass. 131):

"* * * When a deposition is taken with a view to a future trial, it is always subject to contingencies. All future events are contingent. The substance of the certificate in the caption is this; that the party taking the deposition fears, apprehends, believes that the witness is going to be absent, and this appears to the magistrate to be reasonable. The security against the abuse of this power is that, if the party is not right in his apprehension, he cannot use the deposition; the witness must be produced if the anticipated cause, or some sufficient cause, does not exist at the time of the trial. Here the event showed the party was right. The witness himself being a young man, without family or business to bind him here, made his going out of the state dependent on a contingency not within his knowledge or power."

The same is true here. The witness stated in his affidavit that it was his present intention to remain. If he is present, the deposition may not be used. If he is not available at the time of the trial, it will be evident that plaintiff's apprehension is well-founded. In any event, we fail to see how any harm can result from taking the

deposition, while, on the other hand, plaintiff may be seriously prejudiced if he is prevented from taking it and it develops that the witness is not available at the time of the trial.

■ Defendant Williams also contends that the writ of prohibition may not now issue for the reason that the court has acted and that there is nothing further to prohibit. The court's order restraining plaintiff was signed June 17, 1949. The alternative writ was issued out of this court on June 20. At 11:50 a. m. on that day it was served upon the court issuing the restraining order. At that time the restraining order had not been filed or served. After the issuance and service of the alternative writ, Williams' attorney caused the restraining order to be filed with the clerk and served upon plaintiff. Inasmuch as we hold that the court exceeded its authority in proceeding in the matter at all and in view of the fact that an appeal in this case would be entirely inadequate, we have no difficulty in holding that the writ of prohibition may issue for the purpose not only of restraining the court from preventing the taking of the deposition, but also that the proceedings already taken may be annulled. State ex rel. Minnesota Nat. Bank v. District Court, 195 Minn. 169, 262 N. W. 155, *supra*.

The alternative writ is made absolute, and the proceedings taken by the district court restraining plaintiff from taking the deposition of Earl Williams are in all things annulled, with costs and disbursements to relator.